UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: | BKY 09-32106 |
| | Chapter 7 |
| Kevin A. Dahl, | |
| | **NOTICE OF HEARING AND MOTION** |
| Debtor. | **FOR RELIEF FROM STAY** |

TO:    *All Parties in Interest as Set Forth in the Attached Service List*

1.      Crown Bank, its assignees and/or successors in interest ("Secured Creditor"), a party in interest, by and through its undersigned attorney, moves the Court for the relief requested below and gives notice of hearing herewith.

2.      The Court will hold a hearing on this at 10:30 a.m., on July 28, 2009, before the Honorable Gregory F. Kishel in Courtroom Number 2A, at the United States Courthouse, 316 N. Robert Street, Saint Paul, Minnesota 55101.

3.      Any response to this Motion must be filed and delivered no later than July 23, 2009, which is three days before the time set for the hearing (excluding Saturdays, Sundays, and holidays), or filed and served by mail no later than July 17, 2009, which is seven days before the time set for the hearing (excluding Saturdays, Sundays, and holidays). UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 157 and § 1334, Fed. R. Bankr. P. 5005 and Local Rule 1070-1. This proceeding is a core proceeding.  The Petition commencing this involuntary Chapter 7 proceeding was filed on March 31, 2009. The case is now pending in this Court.

5.         This Motion arises under 11 U.S.C. § 362(d)(2) and Fed. R. Bankr. P. 4001. This Motion is filed under Fed. R. Bankr. 9014 and Local Rules 9006-1, 9013-1, et sec. Secured Creditor hereby requests relief from the automatic stay imposed by 11 U.S.C. § 362.

## FACTS

Secured Creditor, Crown Bank, its assignees and/or successors in interest, alleges as follows:

6.         Secured Creditor is the current payee of the promissory note April 16, 2008, in the principal amount of $150,000.00 (the "Note") secured by a personal guaranty (the "Guaranty") and deed of trust (the "Deed of Trust") executed on the same date upon real property generally described as 900 W Bitner Road Unit #24, Park City, Utah 84098 and legally described as:

> UNIT 24, BUILDING F, CONTAINED WITHIN THE CANYON CREEK CONDOMINIUM, A CONDOMINIUM PROJECT AS THE SAME IS IDENTIFIED IN THE RECORD OF SURVEY MAP RECORDED ON NOVEMBER 15, 2000 IN SUMMIT COUNTY, AS ENTRY NO. 576804, (AS SAID RECORD OF SURVEY MAP MAY HAVE HERETOFORE BEEN AMENDED OR SUPPLEMENTED) AND IN THE DECLARATION OF CONDOMINIUM RECORDED IN SUMMIT COUNTY, AS ENTRY NO. 576805 IN BOOK 1341 AT PAGE 1100 (AS SAID DECLARATION MAY HAVE HERETOFORE BEEN AMENDED OR SUPPLEMENTED) TOGETHER WITH THE APPURTENANT UNDIVIDED INTEREST IN SAID PROJECT'S COMMONAREAS AS ESTABLISHED IN SAID DECLARATION AND ALLOWING FOR PERIODIC ALTERATION BOTH IN THE MAGNITUDE OF SAID UNDIVIDED INTEREST AND IN THE COMPOSITION OF THE COMMON AREAS AND FACILITIES TO WHICH SAID INTEREST RELATES.

(the "Property") and set forth in the attached Deed of Trust.  Copies of the Note, Guaranty and Deed of Trust are attached hereto as Exhibits A, B and C respectively, and incorporated by reference.

7.         The Deed of Trust contains a default clause which provides that the filing of a bankruptcy petition by or for the Borrower (i.e. Mr. Dahl) is an event of default and in the event of default the Lender (i.e. Crown Bank) may use all remedies, including selling the Property and applying the proceeds to the balance owing under the Note.

8.      With respect to Secured Creditor's Mortgage, the amount of the unpaid principal balance due and owing is $150,000.00.

9.      The Property is also secured by a first mortgage held by Wels Fargo in the amount of $106,000.00.

10.     Therefore, the total debt secured by the property is $256,000.00.

11.     According to the bankruptcy petition, the Property was subject to a foreclosure sale that was scheduled to take place on April 30, 2009, but the sale was stayed by the bankruptcy filing.

12.     Pursuant to the attached Affidavit of Timothy Matyi, the estimated value of the Property is approximately $169,000.00 to $189,000.00, based upon Crown Bank's review of the prices of recent sales of comparable properties and its credit officer's experience in approving loans for vacation homes.

13.     Based upon the amount of outstanding debt ($256,000.00) and the estimated property value (less than $189,000.00), there is no equity in the Property.

14.     The Property is a vacation home and therefore not essential for an effective reorganization of the bankruptcy estate.

15.     This Court has jurisdiction of this action pursuant to the provisions of Title 28 U.S.C. Sections 1334 and 157 and 11 U.S.C. Section 362(d).

**WHEREFORE**, Secured Creditor prays judgment as follows:

1. For an Order granting relief from the Automatic Stay, permitting this Secured Creditor to move ahead with foreclosure proceedings under Secured Creditor's Note, and to sell the subject Property under the terms of said Note, including necessary action to obtain possession of the Property.

2.   For such Order regarding adequate protection of Secured Creditor's interest as this Court deems proper.

3.   For attorneys' fees and costs of suit incurred herein.

4.   For an Order waiving the 10-day stay described by Bankruptcy Rule 4001(a)(3).

5.   For an Order allowing Secured Creditor to, at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement.  Secured Creditor may contact the Debtor via telephone or written correspondence to offer such an agreement.  Any such agreement shall be non-recourse unless included in a reaffirmation agreement.

6.   For such other relief as this Court deems appropriate.

Dated this 24th day of June, 2009.        GURSTEL, STALOCH & CHARGO, P.A.

                                          BY_/e/ *Bridget A. Sullivan*_____
                                            Bridget A. Sullivan (#265974)
                                            Attorneys for Movant
                                            6681 Country Club Drive
                                            Golden Valley, Minnesota 55427
                                            Telephone:  (763) 267-6855

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 4022188 | KEVIN A DAHL | | 04/18/08 | TGM |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $160,000.00 | Wall Street Journal Prime plus 1.000% | 8.5% | 12/10/08 | Commercial |
| | | Creditor Use Only | | |

# PROMISSORY NOTE
(Commercial - Revolving Draw)

**DATE AND PARTIES.** The date of this Promissory Note (Note) is April 15, 2008. The parties and their addresses are:

**LENDER:**
CROWN BANK
6600 France Avenue South Ste 125
Edina, Minnesota 55435
Telephone: (952) 285-5800

**BORROWER:**
KEVIN A DAHL
18698 KANABEC COURT
LAKEVILLE, Minnesota 55044

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

**A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together. "You" and "Your" refer to the Lender.

**B. Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

**C. Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

**D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

**E. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

**F. Percent.** Rates and rate change limitations are expressed as annualized percentages.

**2. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, amounts advanced from time to time under the terms of this Note up to the maximum outstanding principal balance of $160,000.00 (Principal), plus interest from the date of disbursement, on the unpaid outstanding Principal balance until this Note is paid in full and you have no further obligations to make advances to me under the Loan.

I may borrow up to the Principal amount more than one time.

**3. ADVANCES.** Advances under this Note are made according to the following terms and conditions.

**A. Requests for Advances.** My requests are a warranty that I am in compliance with all the Loan Documents. When required by you for a particular method of advance, my requests for an advance must specify the requested amount and the date and be accompanied with any agreements, documents, and instruments that you require for the Loan. Any request by you of any check, share draft or other charge may, at your option, constitute an advance on the Loan to me. All advances will be made in United States dollars. I will indemnify you and hold you harmless for your reliance on any request for advances that you reasonably believe to be genuine. To the extent permitted by law, I will indemnify you and hold you harmless when the person making any request represents that I authorized this person to request an advance even when this person is unauthorized or this person's signature is not genuine.

I or anyone I authorize to act on my behalf may request advances by the following methods.

    (1) I make a request in person.

    (2) I make a request by phone.

    (3) I make a request by mail.

**B. Advance Limitations.** In addition to any other Loan conditions, requests for, and access to, advances are subject to the following limitations.

    (1) Discretionary Advances. You will make all Loan advances at your sole discretion.

    (2) Advance Amount. Subject to the terms and conditions contained in this Note, advances will be made in exactly the amount I request.

    (3) Disbursement of Advances. On my fulfillment of this Note's terms and conditions, you will disburse the advance in any manner as you and I agree.

    (4) Credit Limit. I understand that you will not ordinarily grant a request for an advance that would cause the unpaid principal of my Loan to be greater than the Principal limit. You may, at your option, grant such a request without obligating yourselves to do so in the future. I will pay any over advances in addition to my regularly scheduled payments. I will repay any over advance by repaying you in full within 10 days after the overdraft occurs.

    (5) Records. Your records will be conclusive evidence as to the amount of advances, the Loan's unpaid principal balances and the accrued interest.

**4. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of 8.5 percent (Interest Rate) until April 16, 2008, after which time it may change as described in the Variable Rate subsection.

**A. Interest After Default.** If you declare a default under the terms of the Loan, including for failure to pay in full at maturity, you may increase the Interest Rate payable on the outstanding Principal balance of this Note. In such event, interest will accrue on the outstanding Principal balance at the variable interest Rate in effect from time to time, plus an additional 2.000 percent, until paid in full.

**B. Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

**C. Statutory Authority.** The amount assessed or collected on this Note is authorized by the Minnesota usury laws under Minn. Stat. § 47.59.

**D. Accrual.** Interest accrues using an Actual/360 days counting method.

**E. Variable Rate.** The Interest Rate may change during the term of this transaction.

    (1) Index. Beginning with the first Change Date, the Interest Rate will be based on the following index: the base rate on corporate loans posted by at least 75% of the 30 largest U.S. banks known as the Wall Street Journal U.S. Prime Rate.

    The Current Index is the most recent index figure available on each Change Date. You do not guaranty by selecting this index, or the margin, that the interest Rate on this Note will be the same rate you charge on any other loan or class of loans you make to me or other borrowers. If this index is no longer available, you will substitute a similar index. You will give me notice of your choice.

    (2) Change Date. Each date on which the Interest Rate may change is called a Change Date. The Interest Rate may change April 16, 2008 and daily thereafter.

    (3) Calculation Of Change. On each Change Date you will calculate the Interest Rate, which will be the Current Index plus 1.000 percent. The result of this calculation will be rounded up to the nearest .001 percent. Subject to any limitations, this will be the Interest Rate until the next Change Date. The new Interest Rate will become effective on each Change Date. The Interest Rate and other charges on this Note will never exceed the highest rate or charge allowed by law for this Note.

    (4) Limitations. The Interest Rate changes are subject to the following limitations.

        (a) Lifetime. The Interest Rate will never be less than 8.500 percent.

    (5) Effect Of Variable Rate. A change in the Interest Rate will have the following effect on the payments: The amount of scheduled payments will change.

**5. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

**A. Late Charge.** If a payment is more than 10 days late, I will be charged 5.000 percent of the Unpaid Portion of Payment. I will pay this late charge promptly but only once for each late payment. This amount may then increase so as to always be the highest amount allowed by law under Minnesota Statutes § 47.59.


EXHIBIT
A
tabbies

6. **PAYMENT.** I agree to pay this Note on demand, but if no demand is made, I agree to pay all accrued interest on the balance outstanding from time to time in regular payments beginning May 15, 2008, then on the same day of each month thereafter. Any payment scheduled for a date falling beyond the last day of the month, will be due on the last day. A final payment of the entire unpaid outstanding balance of Principal and Interest will be due December 10, 2008.

Payments will be rounded up to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Interest payments will be applied first to any charges I owe other than late charges, then to accrued, but unpaid interest, then to late charges. Principal payments will be applied first to the outstanding Principal balance, then to any late charges. If you and I agree to a different application of payments, we will describe our agreement on this Note. The actual amount of my final payment will depend on my payment record.

7. **PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

8. **LOAN PURPOSE.** The purpose of this Loan is WORKING CAPITAL.

9. **ADDITIONAL TERMS.** BORROWER IS REQUIRED TO SUBMIT A PERSONAL FINANCIAL STATEMENT AND TAX RETURN ON AN ANNUAL BASIS.

10. **SECURITY.** The Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document |
|---|---|
| Leases And Rents Assignment - 900 W BITNER ROAD UNIT #24 | KEVIN A DAHL , HOLLY K DAHL |
| Deed Of Trust - 900 W BITNER ROAD UNIT #24 | KEVIN A DAHL , HOLLY K DAHL |

11. **DEFAULT.** I understand that you may demand payment anytime at your discretion. For example, you may demand payment in full if any of the following occur:

A. **Payments.** I fail to make a payment in full when due.

B. **Insolvency or Bankruptcy.** The death, dissolution or insolvency, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Note or any other obligations I have with you.

C. **Death or Incompetency.** I die or am declared legally incompetent.

D. **Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Note.

E. **Other Documents.** A default occurs under the terms of any other Loan Document.

F. **Other Agreements.** I am in default on any other debt or agreement I have with you.

G. **Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. **Judgment.** I fail to satisfy or appeal any judgment against me.

I. **Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. **Name Change.** I change my name or assume an additional name without notifying you before making such a change.

K. **Property Transfer.** I transfer all or a substantial part of my money or property.

L. **Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

M. **Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Note or that the prospect for payment or performance of the Loan is impaired for any reason.

12. **DUE ON SALE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

13. **WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. **Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

B. **No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

14. **REMEDIES.** After I default, you may at your option do any one or more of the following.

A. **Acceleration.** You may make all or any part of the amount owing by the terms of this Note immediately due.

B. **Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

C. **Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

D. **Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of this Note, and accrue interest at the highest post-maturity interest rate.

E. **Termination.** You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

F. **Attachment.** You may attach or garnish my wages or earnings.

G. **Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Note against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Note" means the total amount to which you are entitled to demand payment under the terms of this Note at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

H. **Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

15. **COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Note or any other Loan Document. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest in effect as provided in the terms of this Note. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

16. **COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**17. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Note. The execution and delivery of this Note will not violate any agreement governing me or to which I am a party.

**18. INSURANCE.** I agree to obtain the insurance described in this Loan Agreement.

   **A. Property Insurance.** I will insure or retain insurance coverage on the Property and abide by the insurance requirements of any security instrument securing the Loan.

   **B. Flood Insurance.** Flood insurance is not required at this time. It may be required in the future should the property be included in an updated flood plain map. If required in the future, I may obtain flood insurance from anyone I want that is reasonably acceptable to you.

   **C. Insurance Warranties.** I agree to purchase any insurance coverages that are required, in the amounts you require, as described in this or any other documents I sign for the Loan. I will provide you with continuing proof of coverage. I will buy or provide insurance from a firm licensed to do business in the State where the Property is located. If I buy or provide the insurance from someone other than you, the firm will be reasonably acceptable to you. I will have the insurance company name you as loss payee on any insurance policy. You will apply the insurance proceeds toward what I owe you on the outstanding balance. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will keep the insurance until all debts secured by this agreement are paid. If I want to buy the insurance from you, I have signed a separate statement agreeing to this purchase.

**19. APPLICABLE LAW.** This Note is governed by the laws of Minnesota, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**20. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**21. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**22. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**23. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**24. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably feel you need to decide whether to continue this Loan. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**25. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**26. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

_____
KEVIN A DAHL
Individually

KEVIN A DAHL
Minnesota Promissory Note
MN/4Xpburton00063000005994014041509N
©1996 Bankers Systems, Inc., St. Cloud, MN *Experts*

Initials _____
Page 2

Scanned by AK

# GUARANTY
### (Continuing Debt - Unlimited)

**DATE AND PARTIES.** The date of this Guaranty is April 16, 2009. The parties and their addresses are:

**LENDER:**
CROWN BANK
6800 France Avenue South Ste 125
Edina, MN 55435
Telephone: (952) 285-5800

**BORROWER:**
KEVIN A DAHL
18898 KANABEC COURT
LAKEVILLE, MN 55044

**GUARANTOR:**
HOLLY K DAHL
18898 KANABEC COURT
LAKEVILLE, MN 55044

**1. DEFINITIONS.** As used in this Guaranty, the terms have the following meanings:

**A. Pronouns.** The pronouns "I", "me" and "my" refer to all persons or entities signing this Guaranty, individually and together. "You" and "your" refer to the Lender.

**B. Note.** "Note" refers to the document that evidences the Borrower's indebtedness, and any extensions, modifications and substitutions of the Note.

**C. Property.** "Property" means any property, real, personal or intangible, that secures performance of the obligations of the Note, Debt, or this Guaranty.

**2. SPECIFIC AND FUTURE DEBT GUARANTY.** For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce you, at your option, to make loans or engage in any other transactions with the Borrower from time to time, I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of each and every Debt, of every type, purpose and description that the Borrower either individually, among all or a portion of themselves, or with others, may now or at any time in the future owe you, including, but not limited to the following described Debt(s) including without limitation, all principal, accrued interest, attorneys' fees and collection costs, when allowed by law, that may become due from the Borrower to you in collecting and enforcing the Debt and all other agreements with respect to the Borrower.

A promissory note or other agreement, No. 4022166, dated April 15, 2008, from KEVIN A DAHL (Borrower) to you, in the amount of $150,000.00.

In addition, Debt refers to debts, liabilities, and obligations of the Borrower (including, but not limited to, amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, loan, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs and storage, and all extensions, renewals, refinancings and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, including obligations and duties arising from the terms of all documents prepared or submitted for the transaction such as applications, security agreements, disclosures, and the Note.

You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

**3. EXTENSIONS.** I consent to all renewals, extensions, modifications and substitutions of the Debt which may be made by you upon such terms and conditions as you may see fit from time to time without further notice to me and without limitation as to the number of renewals, extensions, modifications or substitutions.

**A. Future Advances.** I waive notice of and consent to any and all future advances made to the Borrower by you.

**4. UNCONDITIONAL LIABILITY.** I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property. You may sue me alone, or anyone else who is obligated on this Guaranty, or any number of us together, to collect the Debt. My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt. My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower. I will remain obligated to pay on this Guaranty even if any other person who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law.

**5. BANKRUPTCY.** If a bankruptcy petition should at any time be filed by or against the Borrower, the maturity of the Debt, so far as my liability is concerned, shall be accelerated and the Debt shall be immediately payable by me. I acknowledge and agree that this Guaranty, and the Debt secured hereby, will remain in full force and effect at all times, notwithstanding any action or undertakings by, or against, you or against any Property, in connection with any obligation in any proceeding in the United States Bankruptcy Courts. Such action or undertaking includes, without limitation, valuation of Property, election of remedies or imposition of secured or unsecured claim status upon claims by you, pursuant to the United States Bankruptcy Code, as amended. In the event that any payment of principal or interest received and paid by any other guarantor, borrower, surety, endorser or co-maker is deemed, by final order of a court of competent jurisdiction, to have been a voidable preference under the bankruptcy or insolvency laws of the United States or otherwise, then my obligation will remain as an obligation to you and will not be considered as having been extinguished.

**6. REVOCATION.** I agree that this is an absolute and unconditional Guaranty. I agree that this Guaranty will remain binding on me, whether or not there are any Debts outstanding, until you have actually received written notice of my revocation or written notice of my death or incompetence. Notice of revocation or notice of my death or incompetence will not affect my obligations under this Guaranty with respect to any Debts incurred by or for which you have made a commitment to Borrower before you actually receive such notice, and all renewals, extensions, refinancings, and modifications of such Debts. I agree that if any other person signing this Guaranty provides a notice of revocation to you, I will still be obligated under this Guaranty until I provide such a notice of revocation to you. If any other person signing this Guaranty dies or is declared incompetent, such fact will not affect my obligations under this Guaranty.

**7. PROPERTY.** I agree that any Property may be assigned, exchanged, released in whole or in part or substituted without notice to me and without defeating, discharging or diminishing my liability. My obligation is absolute and your failure to perfect any security interest or any act or omission by you which impairs the Property will not relieve me or my liability under this Guaranty. You are under no duty to preserve or protect any Property until you are in actual or constructive possession. For purposes of this paragraph, you will only be in "actual" possession when you have physical, immediate and exclusive control over the Property and have accepted such control in writing. Further, you will only be deemed to be in "constructive" possession when you have both the power and intent to exercise control over the Property.

**8. DEFAULT.** I will be in default if any of the following occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Borrower, or any co-signer, endorser, surety or guarantor of this Guaranty or any Debt.

**C. Death or Incompetency.** I die or am declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Guaranty.

**E. Other Documents.** A default occurs under the terms of any other document relating to the Debt.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Guaranty or that the prospect for payment or performance of the Debt is impaired for any reason.

**9. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers.** In addition, to the extent permitted by law, I consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to the Debt or this Guaranty.

(1) You may renew or extend payments on the Debt, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property.

HOLLY K DAHL
Minnesota Guaranty
MN/4Xpburton0009340000635201604160909Y

©1996 Bankers Systems, Inc., St. Cloud, MN ExpereS

Initials _____
Page 1

**EXHIBIT**

B

(4) You, or any institution participating in the Debt, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of the Debt to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that the Borrower is authorized to modify the terms of the Debt or any instrument securing, guarantying or relating to the Debt.

(7) You may undertake a valuation of any Property in connection with any proceedings under the United States Bankruptcy Code concerning the Borrower or me, regardless of any such valuation, or actual amounts received by you arising from the sale of such Property.

(8) I agree to consent to any waiver granted the Borrower, and agree that any delay or lack of diligence in the enforcement of the Debt, or any failure to file a claim or otherwise protect any of the Debt, in no way affects or impairs my liability.

(9) I agree to waive reliance on any anti-deficiency statutes, through subrogation or otherwise, and such statutes in no way affect or impair my liability. In addition, until the obligations of the Borrower to Lender have been paid in full, I waive any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any other right I may have to enforce any remedy which you now have or in the future may have against the Borrower or another guarantor or as to any Property.

Any Guarantor who is an "insider," as contemplated by the United States Bankruptcy Code, 11 U.S.C. 101, as amended, makes these waivers permanently. (An insider includes, among others, a director, officer, partner, or other person in control of the Borrower, a person or an entity that is a co-partner with the Borrower, an entity in which the Borrower is a general partner, director, officer or other person in control of a close relative of any of these other persons.) Any Guarantor who is not an insider makes these waivers until all Debt is fully repaid.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in the Debt instruments, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**C. Waiver of Claims.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**10. REMEDIES.** After the Borrower in I default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of this Guaranty immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any documents relating to the Debt.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on default.

**D. Payments Made on the Borrower's Behalf.** Amounts advanced on the Borrower's behalf will be immediately due and may be added to the balance owing under the Debt.

**E. Termination.** You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

**F. Attachment.** You may attach or garnish my wages or earnings.

**G. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Guaranty against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Guaranty" means the total amount to which you are entitled to demand payment under the terms of this Guaranty at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Debt, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**H. Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**11. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any other document relating to the Debt. To the extent permitted by law, expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**12. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Guaranty. The execution and delivery of this Guaranty will not violate any agreement governing me or to which I am a party.

In addition, I represent and warrant that this Guaranty was entered into at the request of the Borrower, and that I am satisfied regarding the Borrower's financial condition and existing indebtedness, authority to borrow and the use and intended use of all Debt proceeds. I further represent and warrant that I have not relied on any representations or omissions from you or any information provided by you respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow or the Borrower's use and intended use of all Debt proceeds.

**13. RELIANCE.** I acknowledge that you are relying on this Guaranty in extending credit to the Borrower, and I have signed this Guaranty to induce you to extend such credit. I represent and warrant to you that I expect to derive substantial benefits from any loans and financial accommodations resulting in the creation of indebtedness guarantied hereby. I agree to rely exclusively on the right to revoke this Guaranty prospectively as to future transactions in the manner as previously described in this Guaranty if at any time, in my opinion, the benefits then being received by me in connection with this Guaranty are not sufficient to warrant the continuance of this Guaranty. You may rely conclusively on a continuing warranty that I continue to be benefited by this Guaranty and you will have no duty to inquire into or confirm the receipt of any such benefits, and this Guaranty will be effective and enforceable by you without regard to the receipt, nature or value of any such benefits.

**14. APPLICABLE LAW.** This Guaranty is governed by the laws of Minnesota, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**15. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Guaranty may not be amended or modified by oral agreement. No amendment or modification of this Guaranty is effective unless made in writing and executed by you and me. This Guaranty is the complete and final expression of the agreement. If any provision of this Guaranty is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**16. ASSIGNMENT.** If you assign any of the Debts, you may assign all or any part of this Guaranty without notice to me or my consent, and this Guaranty will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Guaranty as to any of the Debts that are not assigned. This Guaranty shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**17. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Guaranty.

**18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Guarantor will be deemed to be notice to all Guarantors. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Guaranty and to confirm your lien status on any Property. Time is of the essence.

**19. CREDIT INFORMATION.** I agree that from time to time you may obtain credit information about me from others, including other lenders and credit reporting agencies, and report to others (such as a credit reporting agency) your credit experience with me. I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

**20. SIGNATURES.** By signing, I agree to the terms contained in this Guaranty. I also acknowledge receipt of a copy of this Guaranty.

GUARANTOR:

_(signature)_

HOLLY K DAHL
Individually

©1996 Bankers Systems, Inc., St. Cloud, MN Express

Initials _HKD_
Page 2

00846485   B: 1934 P: 0398
 Page 1 of 11
Alan Spriggs, Summit County Utah Recorder
06/09/2008 04:04:09 PM Fee $30 00
 By 1st National Title Insurance Agency, LLC (Sandy)
Electronically Recorded by Simplifile

Return To: CROWN BANK, 601
MARQUETTE AVENUE S., STE. 125,
MINNEAPOLIS, Minnesota 55402

Prepared By: CROWN BANK, 601
MARQUETTE AVENUE S., STE. 125,
MINNEAPOLIS, Minnesota 55402

*901080759*

*080314* 
*2.83096*

Space Above This Line For Recording Data

Tax Serial Number: CCRK - F-24

# DEED OF TRUST
### (With Future Advance Clause)

**DATE AND PARTIES.** The date of this Deed Of Trust (Security Instrument) is April 15, 2008.
The parties and their addresses are:

**GRANTOR:**
**KEVIN A DAHL**
HUSBAND
18698 KANABEC COURT
LAKEVILLE, Minnesota 55044

**HOLLY K DAHL**
WIFE
18698 KANABEC COURT
LAKEVILLE, Minnesota 55044

**TRUSTEE:**
CROWN BANK
a Corporation
6600 FRANCE AVE SO SUITE 125
EDINA, Minnesota 55435

**LENDER:**
CROWN BANK
Organized and existing under the laws of Minnesota
6600 France Avenue South Ste 125
Edina, Minnesota 55435

EXHIBIT
C

**1. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:

UNIT 24, BUILDING F, CONTAINED WITHIN THE CANYON CREEK CONDOMINIUM, A CONDOMINIUM PROJECT AS THE SAME IS IDENTIFIED IN THE RECORD OF SURVEY MAP RECORDED ON NOVEMBER 15, 2000 IN SUMMIT COUNTY, AS ENTRY NO. 576804, (AS SAID RECORD OF SURVEY MAP MAY HAVE HERETOFORE BEEN AMENDED OR SUPPLEMENTED) AND IN THE DECLARATION OF CONDOMINIUM RECORDED IN SUMMIT COUNTY, AS ENTRY NO. 576805 IN BOOK 1341 AT PAGE 1100 (AS SAID DECLARATION MAY HAVE HERETOFORE BEEN AMENDED OR SUPPLEMENTED) TOGETHER WITH THE APPURTENANT UNDIVIDED INTEREST IN SAID PROJECT'S COMMON AREAS AS ESTABLISHED IN SAID DECLARATION AND ALLOWING FOR PERIODIC ALTERATION BOTH IN THE MAGNITUDE OF SAID UNDIVIDED INTEREST AND IN THE COMPOSITION OF THE COMMON AREAS AND FACILITIES TO WHICH SAID INTEREST RELATES.

The property is located in SUMMIT County at 900 W BITNER ROAD UNIT #24, PARK CITY, Utah 84098.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, wells, ditches and water stock, crops, timber, all diversion payments or third party payments made to crop producers and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property). This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

**2. MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time will not exceed $150,000.00. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

**3. SECURED DEBTS.** The term "Secured Debts" includes and this Security Instrument will secure each of the following:

**A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 4022166, dated April 15, 2008, from KEVIN A DAHL (Borrower) to Lender, with a maximum credit limit of $150,000.00, with an initial interest rate of 6.5 percent per year (this is a variable interest rate and may change as the promissory note prescribes). One or more of the debts secured by this Security Instrument contains a future advance provision.

**B. All Debts.** All present and future debts from KEVIN A DAHL to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender

waives any subsequent security interest in the Grantor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. This Security Instrument will not secure any debt for which a security interest is created in "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities.

**C. Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument when the evidence of indebtedness specifically states that it is secured by this Security Instrument.

**4. PAYMENTS.** Grantor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument.

**5. WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

**6. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:

A. To make all payments when due and to perform or comply with all covenants.

B. To promptly deliver to Lender any notices that Grantor receives from the holder.

C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**7. CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

**8. DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**9. WARRANTIES AND REPRESENTATIONS.** Grantor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Grantor or to which Grantor is a party.

**10. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor will not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Grantor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Security Instrument. Grantor will not partition or subdivide the Property without Lender's prior written consent.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender will give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property will be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

**11. AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development, as amended, including the timely payment of dues and assessments. In addition, except with the written approval of Lender, Grantor will not partition or subdivide the Property; abandon or terminate the condominium or planned unit development project; terminate professional management; or amend any provision of the covenants, by-laws or regulations of the condominium or planned unit development if the provision benefits Lender.

**13. DEFAULT.** Grantor will be in default if any of the following occur:

**A. Payments.** Grantor or Borrower fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against Grantor, Borrower, or any co-signer, endorser, surety or guarantor of this Security Instrument or any other obligations Borrower has with Lender.

**C. Death or Incompetency.** Grantor dies or is declared legally incompetent.

**D. Failure to Perform.** Grantor fails to perform any condition or to keep any promise or covenant of this Security Instrument.

**E. Other Documents.** A default occurs under the terms of any other document relating to the Secured Debts.

**F. Other Agreements.** Grantor is in default on any other debt or agreement Grantor has with Lender.

**G. Misrepresentation.** Grantor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** Grantor fails to satisfy or appeal any judgment against Grantor.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** Grantor changes Grantor's name or assumes an additional name without notifying Lender before making such a change.

**K. Property Transfer.** Grantor transfers all or a substantial part of Grantor's money or property. This condition of default, as it relates to the transfer of the Property, is subject to the restrictions contained in the DUE ON SALE section.

**L. Property Value.** Lender determines in good faith that the value of the Property has declined or is impaired.

**M. Insecurity.** Lender determines in good faith that a material adverse change has occurred in Borrower's financial condition from the conditions set forth in Borrower's most recent financial statement before the date of this Security Instrument or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

**14. REMEDIES.** On or after default, Lender may use any and all remedies Lender has under state or federal law or in any document relating to the Secured Debts, including, without limitation, the power to sell the Property. Any amounts advanced on Grantor's behalf will be immediately due and may be added to the balance owing under the Secured Debts. Lender may make a claim for any and all insurance benefits or refunds that may be available on Grantor's default.

Subject to any right to cure, required time schedules or any other notice rights Grantor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of a default or anytime thereafter.

If there is a default, Trustee will, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash. Trustee will give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale.

To the extent not prohibited by law, Trustee will apply the proceeds of the Property's sale in the following order: to all fees, charges, costs and expenses of exercising the power of sale and the sale; to Lender for all advances made for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon; to the Secured Debts' principal and interest; and paying any surplus as required by law. Lender or its designee may purchase the Property.

Upon any sale of the Property, Trustee will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Trustee will covenant that Trustee has not caused or allowed a lien or an encumbrance to burden the Property and that Trustee will specially warrant and defend the Property's title of the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Trustee. The recitals in any deed of conveyance will be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy,

KEVIN A DAHL
Utah Deed Of Trust
MN/4Xpburton00063000005994014041508Y

©1996 Bankers Systems, Inc., St. Cloud, MN *Express*

Initials _____
Page 5

Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**15. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, Grantor agrees to pay all expenses of collection, enforcement or protection of Lender's rights and remedies under this Security Instrument or any other document relating to the Secured Debts. Grantor agrees to pay expenses for Lender to inspect and preserve the Property and for any recordation costs of releasing the Property from this Security Instrument. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Secured Debts. In addition, to the extent permitted by the United States Bankruptcy Code, Grantor agrees to pay the reasonable attorneys' fees incurred by Lender to protect Lender's rights and interests in connection with any bankruptcy proceedings initiated by or against Grantor.

**16. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Grantor represents, warrants and agrees that:

**A.** Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

**B.** Except as previously disclosed and acknowledged in writing to Lender, Grantor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

**C.** Grantor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Grantor will take all necessary remedial action in accordance with Environmental Law.

**D.** Except as previously disclosed and acknowledged in writing to Lender, Grantor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Grantor or any tenant of any Environmental Law. Grantor will immediately notify Lender in writing as soon as Grantor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

**E.** Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are and will remain in full compliance with any applicable Environmental Law.

KEVIN A DAHL
Utah Deed Of Trust
MN/4Xpburton00063000006994014041608Y

©1996 Bankers Systems, Inc., St. Cloud, MN 

Initials
Page 6

**F.** Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

**G.** Grantor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

**H.** Grantor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Grantor and any tenant are in compliance with applicable Environmental Law.

**I.** Upon Lender's request and at any time, Grantor agrees, at Grantor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

**J.** Lender has the right, but not the obligation, to perform any of Grantor's obligations under this section at Grantor's expense.

**K.** As a consequence of any breach of any representation, warranty or promise made in this section, (1) Grantor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Grantor will provide Lender with collateral of at least equal value to the Property without prejudice to any of Lender's rights under this Security Instrument.

**L.** Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section will survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

**17. CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**18. INSURANCE.** Grantor agrees to keep the Property insured against the risks reasonably associated with the Property. Grantor will maintain this insurance in the amounts Lender requires. This insurance will last until the Property is released from this Security Instrument. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debts. Grantor may choose the insurance company, subject to Lender's approval, which will not be unreasonably withheld.

All insurance policies and renewals will include a standard "mortgage clause" and, where applicable, "loss payee clause." If required by Lender, Grantor agrees to maintain comprehensive general liability insurance and rental loss or business interruption insurance in

KEVIN A DAHL
Utah Deed Of Trust
MN/4Xpburton00063000008994014041508Y

©1996 Bankers Systems, Inc., St. Cloud, MN *Express* 

Initials
Page

amounts and under policies acceptable to Lender. The comprehensive general liability insurance must name Lender as an additional insured. The rental loss or business interruption insurance must be in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing).

Grantor will give Lender and the insurance company immediate notice of any loss. All insurance proceeds will be applied to restoration or repair of the Property or to the Secured Debts, at Lender's option. If Lender acquires the Property in damaged condition, Grantor's rights to any insurance policies and proceeds will pass to Lender to the extent of the Secured Debts.

Grantor will immediately notify Lender of cancellation or termination of insurance. If Grantor fails to keep the Property insured, Lender may obtain insurance to protect Lender's interest in the Property and Grantor will pay for the insurance on Lender's demand. Lender may demand that Grantor pay for the insurance all at once, or Lender may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include coverages not originally required of Grantor, may be written by a company other than one Grantor would choose, and may be written at a higher rate than Grantor could obtain if Grantor purchased the insurance. Grantor acknowledges and agrees that Lender or one of Lender's affiliates may receive commissions on the purchase of this insurance.

**19. ESCROW FOR TAXES AND INSURANCE.** Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

**20. CO-SIGNERS.** If Grantor signs this Security Instrument but is not otherwise obligated to pay the Secured Debts, Grantor does so only to convey Grantor's interest in the Property to secure payment of the Secured Debts and Grantor does not agree by signing this Security Instrument to be personally liable on the Secured Debts. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws.

**21. SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, will succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

**22. WAIVERS.** Except to the extent prohibited by law, Grantor waives all appraisement and homestead exemption rights relating to the Property.

**23. OTHER TERMS.** The following are applicable to this Security Instrument:

**A. Line of Credit.** The Secured Debts include a revolving line of credit provision. Although the Secured Debts may be reduced to a zero balance, this Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

**24. APPLICABLE LAW.** This Security Instrument is governed by the laws of Minnesota, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**25. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Grantor's obligations under this Security Instrument are independent of the obligations of any other Grantor. Lender may sue each Grantor individually or together with any other Grantor. Lender may release any part of the Property and Grantor will still be obligated under this Security Instrument for the remaining Property. If this Security Instrument secures a guaranty between Lender and Grantor,

Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Grantor.

**26. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Security Instrument may not be amended or modified by oral agreement. No amendment or modification of this Security Instrument is effective unless made in writing and executed by Grantor and Lender. This Security Instrument and any other documents relating to the Secured Debts are the complete and final expression of the agreement. If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**27. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument.

**28. NOTICE, FINANCIAL REPORTS, ADDITIONAL DOCUMENTS AND RECORDING TAXES.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Grantor will be deemed to be notice to all Grantors. Grantor will inform Lender in writing of any change in Grantor's name, address or other application information. Grantor will provide Lender any financial statements or information Lender requests. All financial statements and information Grantor gives Lender will be correct and complete. Grantor agrees to pay all expenses, charges and taxes in connection with the preparation and recording of this Security Instrument. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and to confirm Lender's lien status on any Property, and Grantor agrees to pay all expenses, charges and taxes in connection with the preparation and recording thereof. Time is of the essence.

**SIGNATURES.** By signing, Grantor agrees to the terms and covenants contained in this Security Instrument. Grantor also acknowledges receipt of a copy of this Security Instrument.

GRANTOR:

KEVIN A DAHL
Individually

HOLLY K DAHL
Individually

KEVIN A DAHL
Utah Deed Of Trust
MN/4Xpburten00083000005994014041508Y

©1996 Bankers Systems, Inc., St. Cloud, MN Expert

Initials
Page 8

**ACKNOWLEDGMENT.**

(Individual)

_____ OF _____, _____ OF _____ ss.

This instrument was acknowledged before me this _21st_ day of _April_ ,
_2008_ by KEVIN A DAHL , HUSBAND, and HOLLY K DAHL , WIFE.

My commission expires:

_Jan 31, 2009_ _~Pamela Comfort~_

(Notary Public)

Residing at: _Citizens Bank MN_

PAMELA L. COMFORT
Notary Public-Minnesota
My Commission Expires Jan 31, 2009

---

### REQUEST FOR RECONVEYANCE

(Not to be completed until paid in full)

TO TRUSTEE:

The undersigned is the holder of the note or notes secured by this Security Instrument. Said note or notes, together with all other indebtedness secured by this Security Instrument, have been paid in full. You are hereby directed to cancel this Security Instrument, which is delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Security Instrument to the person or persons legally entitled thereto.

......................................................    .............................

(Authorized Lender Signature)         (Date)

---

KEVIN A DAHL
Utah Deed Of Trust
MN/4Xpburton00063000005994014041508Y

©1996 Bankers Systems, Inc., St. Cloud, MN *Express*
Initials _____
Page 10

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

---

IN RE:

Kevin A. Dahl,
d/b/a Dahl Senior Housing Associates,
asf Dahl Financial & Consulting Services, LLC

Debtor.

BKY 09-32106
Chapter 7
Involuntary

**AFFIDAVIT OF
TIMOTHY MATYI**

---

STATE OF MINNESOTA )
                                  ) ss.
COUNTY OF HENNEPIN)

1.      My name is Timothy Matyi and I am a Commercial Loan Officer of Crown
Bank.   I make this affidavit on personal knowledge.

2.      On April 15, 2008, Crown Bank made a loan of $150,000.00 ("the Loan") to
Kevin Dahl, the debtor in the above-entitled bankruptcy case.   The loan, loan #4022166, was
secured by a promissory note ("the Note") in the amount of $150,000.00 which was executed by
Mr. Dahl on the same date.   The maturity date of the Note was December 10, 2008.

3.      Mr. Dahl never made a principal payment on the Note and according to the terms
of the Note, it is in default. The Note is attached as Exhibit A.

4.      The Loan was also secured by a Deed of Trust dated April 15, 2008, on a property
located in Park City, Utah at address 900 W. Bitner Road, Unity #24.   On June 9, 2008, Crown
Bank duly recorded the Deed of Trust in Summit County Utah at the County Recorder's office.
The Deed of Trust is attached as Exhibit B.

5.      The Deed of Trust contains a default clause which provides that the filing of a
bankruptcy petition by or for the Borrower (i.e, Mr. Dahl) is an event of default and in the event
of default, the Lender (i.e, Crown Bank) may use all remedies, including selling the property and
applying the proceeds to the balance owing under the Loan and Promissory Note.

6.     The Park City, Utah property is also secured by a first mortgage held by Wells Fargo.  According to the involuntary petition, the balance of the loan secured by the first mortgage is $106,000.00.  Therefore the total debt secured by the property is $256,000.00

7.     According to the bankruptcy petition, the property was subject to a foreclosure sale that was scheduled to take place on April 30, 2009, but the sale was stayed by the bankruptcy filing.

8.     Crown Bank's estimate of the value of the property is approximately $169,000.00 -- $189,000.00.  This is based upon our review of the prices of recent sales of comparable properties and our credit officer's experience in approving loans for vacation homes. These comparable sales are attached as Exhibit C.

9.     Based upon the debt outstanding ($265,000.00) on the property and the estimated property value (less than $189,000.00), there is no equity in the property.

10.     Because the property is a vacation home—it is a condominium located near ski resorts, it is not essential for an effective reorganization of the bankruptcy estate.


FURTHER YOUR AFFIANT SAYETH NOT.

Dated:  June 16, 2009

Timothy Matyi

Subscribed and sworn before me
this 16th day of June, 2009.

Notary Public

**MARY E FERKINGSTAD**
**NOTARY PUBLIC - MINNESOTA**
My Commission Expires Jan. 31, 2012

2

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 4022188 | KEVIN A DAHL | | 04/18/08 | TGM |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $150,000.00 | Wall Street Journal Prime plus 1.000% | 8.5% | 12/10/08 | Commercial |
| | | Creditor Use Only | | |

## PROMISSORY NOTE
(Commercial - Revolving Draw)

**DATE AND PARTIES.** The date of this Promissory Note (Note) is April 15, 2008. The parties and their addresses are:

**LENDER:**
CROWN BANK
6600 France Avenue South Ste 125
Edina, Minnesota 55435
Telephone: (952) 285-5800

**BORROWER:**
KEVIN A DAHL
18898 KANABEC COURT
LAKEVILLE, Minnesota 55044

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

**A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together. "You" and "Your" refer to the Lender.

**B. Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

**C. Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

**D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

**E. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

**F. Percent.** Rates and rate change limitations are expressed as annualized percentages.

**2. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, amounts advanced from time to time under the terms of this Note up to the maximum outstanding principal balance of $150,000.00 (Principal), plus interest from the date of disbursement, on the unpaid outstanding Principal balance until this Note is paid in full and you have no further obligations to make advances to me under the Loan.

I may borrow up to the Principal amount more than one time.

**3. ADVANCES.** Advances under this Note are made according to the following terms and conditions.

**A. Requests for Advances.** My requests are a warranty that I am in compliance with all the Loan Documents. When required by you for a particular method of advance, my requests for an advance must specify the requested amount and the date and be accompanied with any agreements, documents, and instruments that you require for the Loan. Any request by you of any check, share draft or other charge may, at your option, constitute an advance on the Loan to me. All advances will be made in United States dollars. I will indemnify you and hold you harmless for your reliance on any request for advances that you reasonably believe to be genuine. To the extent permitted by law, I will indemnify you and hold you harmless when the person making any request represents that I authorized this person to request an advance even when this person is unauthorized to this person's signature is not genuine.

I or anyone I authorize to act on my behalf may request advances by the following methods.

(1) I make a request in person.

(2) I make a request by phone.

(3) I make a request by mail.

**B. Advance Limitations.** In addition to any other Loan conditions, requests for, and access to, advances are subject to the following limitations.

(1) Discretionary Advances. You will make all Loan advances at your sole discretion.

(2) Advance Amount. Subject to the terms and conditions contained in this Note, advances will be made in exactly the amount I request.

(3) Disbursement of Advances. On my fulfillment of this Note's terms and conditions, you will disburse the advance in any manner as you and I agree.

(4) Credit Limit. I understand that you will not ordinarily grant a request for an advance that would cause the unpaid principal of my Loan to be greater than the Principal limit. You may, at your option, grant such a request without obligating yourselves to do so in the future. I will pay any over advances in addition to my regularly scheduled payments. I will repay any over advance by repaying you in full within 10 days after the overdraft occurs.

(5) Records. Your records will be conclusive evidence as to the amount of advances, the Loan's unpaid principal balances and the accrued interest.

**4. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of 8.5 percent (Interest Rate) until April 16, 2008, after which time it may change as described in the Variable Rate subsection.

**A. Interest After Default.** If you declare a default under the terms of the Loan, including for failure to pay in full at maturity, you may increase the Interest Rate payable on the outstanding Principal balance of this Note. In such event, interest will accrue on the outstanding Principal balance at the variable interest Rate in effect from time to time, plus an additional 2.000 percent, until paid in full.

**B. Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

**C. Statutory Authority.** The amount assessed or collected on this Note is authorized by the Minnesota usury laws under Minn. Stat. § 47.59.

**D. Accrual.** Interest accrues using an Actual/360 days counting method.

**E. Variable Rate.** The Interest Rate may change during the term of this transaction.

(1) Index. Beginning with the first Change Date, the Interest Rate will be based on the following index: the base rate on corporate loans posted by at least 75% of the 30 largest U.S. banks known as the Wall Street Journal U.S. Prime Rate.

The Current Index is the most recent Index figure available on each Change Date. You do not guaranty by selecting this Index, or the margin, that the Interest Rate on this Note will be the same rate you charge on any other loan or class of loans you make to me or other borrowers. If this Index is no longer available, you will substitute a similar index. You will give me notice of your choice.

(2) Change Date. Each date on which the Interest Rate may change is called a Change Date. The Interest Rate may change April 16, 2008 and daily thereafter.

(3) Calculation Of Change. On each Change Date you will calculate the Interest Rate, which will be the Current Index plus 1.000 percent. The result of this calculation will be rounded up to the nearest .001 percent. Subject to any limitations, this will be the Interest Rate until the next Change Date. The new Interest Rate will become effective on each Change Date. The Interest Rate and other charges on this Note will never exceed the highest rate or charge allowed by law for this Note.

(4) Limitations. The Interest Rate changes are subject to the following limitations:

(a) Lifetime. The Interest Rate will never be less than 8.500 percent.

(5) Effect Of Variable Rate. A change in the interest Rate will have the following effect on the payments: The amount of scheduled payments will change.

**5. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

**A. Late Charge.** If a payment is more than 10 days late, I will be charged 5.000 percent of the Unpaid Portion of Payment. I will pay this late charge promptly but only once for each late payment. This amount may then increase so as to always be the highest amount allowed by law under Minnesota Statutes § 47.59.

KEVIN A DAHL
Minnesota Promissory Note
MN/4Xpburton00363000005994014041508N

©1996 Bankers Systems, Inc., St. Cloud, MN *Expert*

Initials _____
Page 1



EXHIBIT
A
tabbies

6. PAYMENT. I agree to pay this Note on demand, but if no demand is made, I agree to pay all accrued interest on the balance outstanding from time to time in regular payments beginning May 15, 2008, then on the same day of each month thereafter. Any payment scheduled for a date falling beyond the last day of the month, will be due on the last day. A final payment of the entire unpaid outstanding balance of Principal and Interest will be due December 10, 2008.

Payments will be rounded up to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Interest payments will be applied first to any charges I owe other than late charges, then to accrued, but unpaid interest, then to late charges. Principal payments will be applied first to the outstanding Principal balance, then to any late charges. If you and I agree to a different application of payments, we will describe our agreement on this Note. The actual amount of my final payment will depend on my payment record.

7. PREPAYMENT. I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

8. LOAN PURPOSE. The purpose of this Loan is WORKING CAPITAL.

9. ADDITIONAL TERMS. BORROWER IS REQUIRED TO SUBMIT A PERSONAL FINANCIAL STATEMENT AND TAX RETURN ON AN ANNUAL BASIS.

10. SECURITY. The Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document |
|---|---|
| Leases And Rents Assignment - 800 W BITNER ROAD UNIT #24 | KEVIN A DAHL , HOLLY K DAHL |
| Deed Of Trust - 800 W BITNER ROAD UNIT #24 | KEVIN A DAHL , HOLLY K DAHL |

11. DEFAULT. I understand that you may demand payment anytime at your discretion. For example, you may demand payment in full if any of the following occur:

A. Payments. I fail to make a payment in full when due.

B. Insolvency or Bankruptcy. The death, dissolution or insolvency, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Note or any other obligations I have with you.

C. Death or Incompetency. I die or am declared legally incompetent.

D. Failure to Perform. I fail to perform any condition or to keep any promise or covenant of this Note.

E. Other Documents. A default occurs under the terms of any other Loan Document.

F. Other Agreements. I am in default on any other debt or agreement I have with you.

G. Misrepresentation. I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. Judgment. I fail to satisfy or appeal any judgment against me.

I. Forfeiture. The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. Name Change. I change my name or assume an additional name without notifying you before making such a change.

K. Property Transfer. I transfer all or a substantial part of my money or property.

L. Property Value. You determine in good faith that the value of the Property has declined or is impaired.

M. Insecurity. You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Note or that the prospect for payment or performance of the Loan is impaired for any reason.

12. DUE ON SALE. You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

13. WAIVERS AND CONSENT. To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. Additional Waivers By Borrower. In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

B. No Waiver By Lender. Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

14. REMEDIES. After I default, you may at your option do any one or more of the following.

A. Acceleration. You may make all or any part of the amount owing by the terms of this Note immediately due.

B. Sources. You may use any and all remedies you have under state or federal law or in any Loan Document.

C. Insurance Benefits. You may make a claim for any and all insurance benefits or refunds that may be available on my default.

D. Payments Made On My Behalf. Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of this Note, and accrue interest at the highest post-maturity interest rate.

E. Termination. You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

F. Attachment. You may attach or garnish my wages or earnings.

G. Set-Off. You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Note against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Note" means the total amount to which you are entitled to demand payment under the terms of this Note at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

H. Waiver. Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

15. COLLECTION EXPENSES AND ATTORNEYS' FEES. On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Note or any other Loan Document. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest in effect as provided in the terms of this Note. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

16. COMMISSIONS. I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**17. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Note. The execution and delivery of this Note will not violate any agreement governing me or to which I am a party.

**18. INSURANCE.** I agree to obtain the insurance described in this Loan Agreement.

  **A.** Property Insurance. I will insure or retain insurance coverage on the Property and abide by the insurance requirements of any security instrument securing the Loan.

  **B.** Flood Insurance. Flood insurance is not required at this time. It may be required in the future should the property be included in an updated flood plain map. If required in the future, I may obtain flood insurance from anyone I want that is reasonably acceptable to you.

  **C.** Insurance Warranties. I agree to purchase any insurance coverages that are required, in the amounts you require, as described in this or any other documents I sign for the Loan. I will provide you with continuing proof of coverage. I will buy or provide insurance from a firm licensed to do business in the State where the Property is located. If I buy or provide the insurance from someone other than you, the firm will be reasonably acceptable to you. I will have the insurance company name you as loss payee on any insurance policy. You will apply the insurance proceeds toward what I owe you on the outstanding balance. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will keep the insurance until all debts secured by this agreement are paid. If I want to buy the insurance from you, I have signed a separate statement agreeing to this purchase.

**19. APPLICABLE LAW.** This Note is governed by the laws of Minnesota, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**20. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**21. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**22. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**23. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**24. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably feel you need to decide whether to continue this Loan. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**25. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**26. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

_(signature)_
KEVIN A DAHL
Individually

00846485     B: 1934 P: 0398
 Page 1 of 11
Alan Spriggs, Summit County Utah Recorder
06/09/2008 04:04:09 PM Fee $30 00
 By 1st National Title Insurance Agency, LLC (Sandy)
Electronically Recorded by Simplifile

Return To: CROWN BANK, 601
MARQUETTE AVENUE S., STE. 125,
MINNEAPOLIS, Minnesota 55402

Prepared By: CROWN BANK, 601
MARQUETTE AVENUE S., STE. 125,
MINNEAPOLIS, Minnesota 55402

*901080759*

*0803109*
*2183096*

Space Above This Line For Recording Data

Tax Serial Number: CCRK - F - 24

## DEED OF TRUST
(With Future Advance Clause)

**DATE AND PARTIES.** The date of this Deed Of Trust (Security Instrument) is April 15, 2008.
The parties and their addresses are:

GRANTOR:
 **KEVIN A DAHL**
 HUSBAND
 18698 KANABEC COURT
 LAKEVILLE, Minnesota 55044

 **HOLLY K DAHL**
 WIFE
 18698 KANABEC COURT
 LAKEVILLE, Minnesota 55044

TRUSTEE:
 CROWN BANK
 a Corporation
 6600 FRANCE AVE SO SUITE 125
 EDINA, Minnesota 55435

LENDER:
 CROWN BANK
 Organized and existing under the laws of Minnesota
 6600 France Avenue South Ste 125
 Edina, Minnesota 55435

EXHIBIT

B

**1. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:

UNIT 24, BUILDING F, CONTAINED WITHIN THE CANYON CREEK CONDOMINIUM, A CONDOMINIUM PROJECT AS THE SAME IS IDENTIFIED IN THE RECORD OF SURVEY MAP RECORDED ON NOVEMBER 15, 2000 IN SUMMIT COUNTY, AS ENTRY NO. 576804, (AS SAID RECORD OF SURVEY MAP MAY HAVE HERETOFORE BEEN AMENDED OR SUPPLEMENTED) AND IN THE DECLARATION OF CONDOMINIUM RECORDED IN SUMMIT COUNTY, AS ENTRY NO. 576805 IN BOOK 1341 AT PAGE 1100 (AS SAID DECLARATION MAY HAVE HERETOFORE BEEN AMENDED OR SUPPLEMENTED) TOGETHER WITH THE APPURTENANT UNDIVIDED INTEREST IN SAID PROJECT'S COMMON AREAS AS ESTABLISHED IN SAID DECLARATION AND ALLOWING FOR PERIODIC ALTERATION BOTH IN THE MAGNITUDE OF SAID UNDIVIDED INTEREST AND IN THE COMPOSITION OF THE COMMON AREAS AND FACILITIES TO WHICH SAID INTEREST RELATES.

The property is located in SUMMIT County at 900 W BITNER ROAD UNIT #24, PARK CITY, Utah 84098.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, wells, ditches and water stock, crops, timber, all diversion payments or third party payments made to crop producers and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property). This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

**2. MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time will not exceed $150,000.00. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

**3. SECURED DEBTS.** The term "Secured Debts" includes and this Security Instrument will secure each of the following:

**A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 4022166, dated April 15, 2008, from KEVIN A DAHL (Borrower) to Lender, with a maximum credit limit of $150,000.00, with an initial interest rate of 6.5 percent per year (this is a variable interest rate and may change as the promissory note prescribes). One or more of the debts secured by this Security Instrument contains a future advance provision.

**B. All Debts.** All present and future debts from KEVIN A DAHL to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender

waives any subsequent security interest in the Grantor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. This Security Instrument will not secure any debt for which a security interest is created in "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities.

**C. Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument when the evidence of indebtedness specifically states that it is secured by this Security Instrument.

**4. PAYMENTS.** Grantor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument.

**5. WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

**6. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:

    **A.** To make all payments when due and to perform or comply with all covenants.

    **B.** To promptly deliver to Lender any notices that Grantor receives from the holder.

    **C.** Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**7. CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

**8. DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**9. WARRANTIES AND REPRESENTATIONS.** Grantor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Grantor or to which Grantor is a party.

**10. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor will not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Grantor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Security Instrument. Grantor will not partition or subdivide the Property without Lender's prior written consent.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender will give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property will be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

**11. AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development, as amended, including the timely payment of dues and assessments. In addition, except with the written approval of Lender, Grantor will not partition or subdivide the Property; abandon or terminate the condominium or planned unit development project; terminate professional management; or amend any provision of the covenants, by-laws or regulations of the condominium or planned unit development if the provision benefits Lender.

**13. DEFAULT.** Grantor will be in default if any of the following occur:

   **A. Payments.** Grantor or Borrower fail to make a payment in full when due.

   **B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against Grantor, Borrower, or any co-signer, endorser, surety or guarantor of this Security Instrument or any other obligations Borrower has with Lender.

   **C. Death or Incompetency.** Grantor dies or is declared legally incompetent.

   **D. Failure to Perform.** Grantor fails to perform any condition or to keep any promise or covenant of this Security Instrument.

   **E. Other Documents.** A default occurs under the terms of any other document relating to the Secured Debts.

   **F. Other Agreements.** Grantor is in default on any other debt or agreement Grantor has with Lender.

   **G. Misrepresentation.** Grantor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** Grantor fails to satisfy or appeal any judgment against Grantor.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** Grantor changes Grantor's name or assumes an additional name without notifying Lender before making such a change.

**K. Property Transfer.** Grantor transfers all or a substantial part of Grantor's money or property. This condition of default, as it relates to the transfer of the Property, is subject to the restrictions contained in the DUE ON SALE section.

**L. Property Value.** Lender determines in good faith that the value of the Property has declined or is impaired.

**M. Insecurity.** Lender determines in good faith that a material adverse change has occurred in Borrower's financial condition from the conditions set forth in Borrower's most recent financial statement before the date of this Security Instrument or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

**14. REMEDIES.** On or after default, Lender may use any and all remedies Lender has under state or federal law or in any document relating to the Secured Debts, including, without limitation, the power to sell the Property. Any amounts advanced on Grantor's behalf will be immediately due and may be added to the balance owing under the Secured Debts. Lender may make a claim for any and all insurance benefits or refunds that may be available on Grantor's default.

Subject to any right to cure, required time schedules or any other notice rights Grantor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of a default or anytime thereafter.

If there is a default, Trustee will, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash. Trustee will give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale.

To the extent not prohibited by law, Trustee will apply the proceeds of the Property's sale in the following order: to all fees, charges, costs and expenses of exercising the power of sale and the sale; to Lender for all advances made for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon; to the Secured Debts' principal and interest; and paying any surplus as required by law. Lender or its designee may purchase the Property.

Upon any sale of the Property, Trustee will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Trustee will covenant that Trustee has not caused or allowed a lien or an encumbrance to burden the Property and that Trustee will specially warrant and defend the Property's title of the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Trustee. The recitals in any deed of conveyance will be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy,

KEVIN A DAHL
Utah Deed Of Trust
MN/4Xpburton00083000005994014041508Y

©1998 Bankers Systems, Inc., St. Cloud, MN *Expere*

Initials _____
Page 5

Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**15. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, Grantor agrees to pay all expenses of collection, enforcement or protection of Lender's rights and remedies under this Security Instrument or any other document relating to the Secured Debts. Grantor agrees to pay expenses for Lender to inspect and preserve the Property and for any recordation costs of releasing the Property from this Security Instrument. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Secured Debts. In addition, to the extent permitted by the United States Bankruptcy Code, Grantor agrees to pay the reasonable attorneys' fees incurred by Lender to protect Lender's rights and interests in connection with any bankruptcy proceedings initiated by or against Grantor.

**16. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Grantor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

B. Except as previously disclosed and acknowledged in writing to Lender, Grantor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

C. Grantor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Grantor will take all necessary remedial action in accordance with Environmental Law.

D. Except as previously disclosed and acknowledged in writing to Lender, Grantor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Grantor or any tenant of any Environmental Law. Grantor will immediately notify Lender in writing as soon as Grantor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are and will remain in full compliance with any applicable Environmental Law.

KEVIN A DAHL
Utah Deed Of Trust
MN/4Xpburton00063000006994014041508Y
©1996 Bankers Systems, Inc., St. Cloud, MN Experts'
Initials
Page 5

**F.** Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

**G.** Grantor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

**H.** Grantor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Grantor and any tenant are in compliance with applicable Environmental Law.

**I.** Upon Lender's request and at any time, Grantor agrees, at Grantor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

**J.** Lender has the right, but not the obligation, to perform any of Grantor's obligations under this section at Grantor's expense.

**K.** As a consequence of any breach of any representation, warranty or promise made in this section, (1) Grantor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Grantor will provide Lender with collateral of at least equal value to the Property without prejudice to any of Lender's rights under this Security Instrument.

**L.** Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section will survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

**17. CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**18. INSURANCE.** Grantor agrees to keep the Property insured against the risks reasonably associated with the Property. Grantor will maintain this insurance in the amounts Lender requires. This insurance will last until the Property is released from this Security Instrument. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debts. Grantor may choose the insurance company, subject to Lender's approval, which will not be unreasonably withheld.

All insurance policies and renewals will include a standard "mortgage clause" and, where applicable, "loss payee clause." If required by Lender, Grantor agrees to maintain comprehensive general liability insurance and rental loss or business interruption insurance in

amounts and under policies acceptable to Lender. The comprehensive general liability insurance must name Lender as an additional insured. The rental loss or business interruption insurance must be in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing).

Grantor will give Lender and the insurance company immediate notice of any loss. All insurance proceeds will be applied to restoration or repair of the Property or to the Secured Debts, at Lender's option. If Lender acquires the Property in damaged condition, Grantor's rights to any insurance policies and proceeds will pass to Lender to the extent of the Secured Debts.

Grantor will immediately notify Lender of cancellation or termination of insurance. If Grantor fails to keep the Property insured, Lender may obtain insurance to protect Lender's interest in the Property and Grantor will pay for the insurance on Lender's demand. Lender may demand that Grantor pay for the insurance all at once, or Lender may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include coverages not originally required of Grantor, may be written by a company other than one Grantor would choose, and may be written at a higher rate than Grantor could obtain if Grantor purchased the insurance. Grantor acknowledges and agrees that Lender or one of Lender's affiliates may receive commissions on the purchase of this insurance.

**19. ESCROW FOR TAXES AND INSURANCE.** Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

**20. CO-SIGNERS.** If Grantor signs this Security Instrument but is not otherwise obligated to pay the Secured Debts, Grantor does so only to convey Grantor's interest in the Property to secure payment of the Secured Debts and Grantor does not agree by signing this Security Instrument to be personally liable on the Secured Debts. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws.

**21. SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, will succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

**22. WAIVERS.** Except to the extent prohibited by law, Grantor waives all appraisement and homestead exemption rights relating to the Property.

**23. OTHER TERMS.** The following are applicable to this Security Instrument:

   **A. Line of Credit.** The Secured Debts include a revolving line of credit provision. Although the Secured Debts may be reduced to a zero balance, this Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

**24. APPLICABLE LAW.** This Security Instrument is governed by the laws of Minnesota, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**25. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Grantor's obligations under this Security Instrument are independent of the obligations of any other Grantor. Lender may sue each Grantor individually or together with any other Grantor. Lender may release any part of the Property and Grantor will still be obligated under this Security Instrument for the remaining Property. If this Security Instrument secures a guaranty between Lender and Grantor,

Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Grantor.

**26. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Security Instrument may not be amended or modified by oral agreement. No amendment or modification of this Security Instrument is effective unless made in writing and executed by Grantor and Lender. This Security Instrument and any other documents relating to the Secured Debts are the complete and final expression of the agreement. If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**27. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument.

**28. NOTICE, FINANCIAL REPORTS, ADDITIONAL DOCUMENTS AND RECORDING TAXES.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Grantor will be deemed to be notice to all Grantors. Grantor will inform Lender in writing of any change in Grantor's name, address or other application information. Grantor will provide Lender any financial statements or information Lender requests. All financial statements and information Grantor gives Lender will be correct and complete. Grantor agrees to pay all expenses, charges and taxes in connection with the preparation and recording of this Security Instrument. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and to confirm Lender's lien status on any Property, and Grantor agrees to pay all expenses, charges and taxes in connection with the preparation and recording thereof. Time is of the essence.

**SIGNATURES.** By signing, Grantor agrees to the terms and covenants contained in this Security Instrument. Grantor also acknowledges receipt of a copy of this Security Instrument.

GRANTOR:

KEVIN A DAHL
Individually

HOLLY K DAHL
Individually

**ACKNOWLEDGMENT.**
(Individual)

_____ OF _____, _____ OF _____ ss.

This instrument was acknowledged before me this _21st_ day of _April_ , _2008_ by KEVIN A DAHL , HUSBAND, and HOLLY K DAHL , WIFE.

My commission expires:

_Jan 31, 2009_ _Pamela Comfort_
(Notary Public)
Residing at: _Citizens Bank MN_

PAMELA L. COMFORT
Notary Public-Minnesota
My Commission Expires Jan 31, 2009

---

### REQUEST FOR RECONVEYANCE
(Not to be completed until paid in full)

TO TRUSTEE:

The undersigned is the holder of the note or notes secured by this Security Instrument. Said note or notes, together with all other indebtedness secured by this Security Instrument, have been paid in full. You are hereby directed to cancel this Security Instrument, which is delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Security Instrument to the person or persons legally entitled thereto.

..................................................   ..............................
(Authorized Lender Signature)            (Date)

KEVIN A DAHL
Utah Deed Of Trust
MN/4Xpburton00063000005994014041508Y
©1996 Bankers Systems, Inc., St. Cloud, MN _Expert_™
Initials ____
Page 10

Comp 1
for Kevin Dath
Condo



## Property Details - 900 W BITNER RD # K-20

### Property Photos

### Property Features

Includes all appliances. Furniture negotiable. This condo will impress you with a creek view from the deck, mountain views from the living area, full price offer includes $3,500 closing costs. Indoor, outdoor pools, hot tub, fitness center. One mile from movies, shopping, restaurants. Free bus route, HOA includes basic cable, indoor, outdoor pools, hot tub, fitness center. 1 mile from movies, shopping, resturants. Free Bus Route. 10 minutes to 3 ski resorts, 15 minutes to Salt Lake.

| City/Town | Park City | Bedrooms | 2 | MLS Number | 9972321 |
|---|---|---|---|---|---|
| Subdivision | 306 | Bathrooms | 2 | Listing Price | $269,000 |
| Address | 900 W BITNER RD # K-20 | Square Feet | 1,135 | Property Type | Condominium |
| Zip Code | 84098 | Acres | | Open House | |

**EXHIBIT**

tabbies

C

Comp 2
for Kevin Deth
condo

## Property Details - 900 W Bitner Road # L-20

### Property Photos



### Property Features

Perfect townhouse with attached garage, driveway, no one above or below. Common indoor outdoor pools, hot tubs, fitness center, clubhouse. Free bus route. One mile from shopping, movies, malls. Fish in the creek out your back door. Basic cable included in HOA dues. One year warranty paid by seller. Best priced, clean, move-in ready. Seller will pay one year HOA dues and contribute $3,000 toward Buyer's closing costs with full price offer.

| City/Town | Park City | Bedrooms | 2 | MLS Number | 9969850 |
|---|---|---|---|---|---|
| Subdivision | 308 | Bathrooms | 2 | Listing Price | $265,000 |
| Address | 900 W Bitner Road # L-20 | Square Feet | 1,135 | Property Type | Condominium |
| Zip Code | 84098 | Acres | | Open House | |

IN RE:                                                                    BKY 09-32106
                                                                              Chapter 7

Kevin A. Dahl,
                                                    **MEMORANDUM OF LAW IN SUPPORT**
                                        Debtor.    **OF MOTION FOR RELIEF FROM STAY**

Crown Bank, its assignees and/or successors in interest ("Secured Creditor") submits this

Memorandum of Law in Support of its Motion for Relief from Automatic Stay in the above-

entitled matter.

## **FACTS**

The facts are as outlined in Secured Creditor's Notice of Hearing and Motion for Relief

from the Automatic Stay, and all the capitalized terms contained herein have the same meanings

as in the Motion.

That on or about March 31, 2009, the Petition commencing this involuntary Chapter 7

proceeding was filed. The case is now pending in this Court.

Secured Creditor is the current payee of the promissory note April 16, 2008, in the

principal amount of $150,000.00 (the "Note") secured by a personal guaranty (the "Guaranty")

and deed of trust (the "Deed of Trust") executed on the same date upon property generally

described as 900 W Bitner Road Unit #24, Park City, Utah 84098 and legally described as:

> UNIT 24, BUILDING F, CONTAINED WITHIN THE CANYON CREEK
> CONDOMINIUM, A CONDOMINIUM PROJECT AS THE SAME IS IDENTIFIED IN
> THE RECORD OF SURVEY MAP RECORDED ON NOVEMBER 15, 2000 IN
> SUMMIT COUNTY, AS ENTRY NO. 576804, (AS SAID RECORD OF SURVEY
> MAP MAY HAVE HERETOFORE BEEN AMENDED OR SUPPLEMENTED) AND
> IN THE DECLARATION OF CONDOMINIUM RECORDED IN SUMMIT COUNTY,
> AS ENTRY NO. 576805 IN BOOK 1341 AT PAGE 1100 (AS SAID DECLARATION
> MAY HAVE HERETOFORE BEEN AMENDED OR SUPPLEMENTED) TOGETHER
> WITH THE APPURTENANT UNDIVIDED INTEREST IN SAID PROJECT'S
> COMMONAREAS AS ESTABLISHED IN SAID DECLARATION AND ALLOWING
> FOR PERIODIC ALTERATION BOTH IN THE MAGNITUDE OF SAID
> UNDIVIDED INTEREST AND IN THE COMPOSITION OF THE COMMON AREAS
> AND FACILITIES TO WHICH SAID INTEREST RELATES.

(the "Property") and set forth in the attached Deed of Trust.  Copies of the Note, Guaranty and

Deed of Trust are attached hereto as Exhibits A, B and C respectively, and incorporated by

reference.

The Deed of Trust contains a default clause which provides that the filing of a bankruptcy

petition byor for the Borrower (i.e. Mr. Dahl) is an event of default and in the event of default the

Lender (i.e. Crown Bank) may use all remedies, including selling the Property and applying the

proceeds to the balance owing under the Note.

With respect to Secured Creditor's Mortgage, the amount of the unpaid principal balance

due and owing is $150,000.00.  The Property is also secured by a first mortgage held by Wels

Fargo in the amount of $106,000.00.  Therefore, the total debt secured by the property is

$256,000.00.  According to the bankruptcy petition, the Property was subject to a foreclosure

sale that was scheduled to take place on April 30, 2009, but the sale was stayed by the

bankruptcy filing.  Crown Bank's estimated value of the Property is approximately $169,000.00

to $189,000.00, based upon its review of the prices of recent sales of comparable properties and

its credit officer's experience in approving loans for vacation homes.  A copy of the comparable

homes is attached as Exhibit D and incorporated by reference.

Based upon the amount of outstanding debt ($256,000.00) and the estimated property

value (less than $189,000.00), there is no equity in the Property.  Furthermore, the Property is a

vacation home and therefore not essential for an effective reorganization of the bankruptcy

estate.

<u>**ARGUMENT**</u>

While no order for relief is entered upon the filing of a petition, its filing creates an estate

consisting of all of the debtor's property. <u>See</u> 11 U.S.C. § 541(a). This estate is automatically

protected by a stay against, among other things, the enforcement of claims and liens. <u>See</u> 11

U.S.C. § 362(a). If a creditor wishes to enforce a claim or lien against property of the estate, it must first obtain relief from the automatic stay. 11 U.S.C. §§ 362(a) and (d).

The automatic stay is one of the fundamental rights afforded the debtor in bankruptcy. The automatic stay provides a bankruptcy debtor with "'a breathing spell from his creditors' in which he may attempt 'a repayment or reorganization plan.'" Farley v. Henson, 2 F.3d 273, 274 (8th Cir. 1993). Application of the automatic stay to secured creditors presents significant issues involving a balance between protecting secured creditors and allowing debtors a reprieve from collection activities.

Once a bankruptcy is initiated, a debtor is frequently in a position to discontinue payments on a debt because it is shielded by the automatic stay. Secured creditors are prevented from enforcing their liens by the automatic stay and are entitled to "adequate protection" of their rights. See 11 U.S.C. §§ 361 and 362(d)(1). Under Section 362(d)(1) of the Bankruptcy Code, relief from the automatic stay shall be granted upon request of a creditor "*for cause, including the lack of adequate protection* of an interest in property of such creditor." 11 U.S.C. § 362(d)(1) (emphasis added). Under this provision, the moving party must make an initial showing of cause and upon such a showing, the burden of proof shifts to the party opposing the lift stay motion. See Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1285 (2nd Cir. 1990). Once a prima facie showing of cause is proffered by a creditor seeking relief from the automatic stay**,** the burden of proof as to whether the automatic stay shall be continued falls upon the debtor. See 11 U.S.C. § 362 (g)(2). Unfortunately, the term "cause" is not defined in the Bankruptcy Code and the legislative history sheds little light on its meaning.

The concept of adequate protection is intended to protect an entity's interest in property from a decline or threatened decline in value. See In re Anthem Communities/RBG, LLC, 267 B.R. 867, 871 (Bankr.D.Colo. 2001); United Sav. Ass'n v. Timbers of Inwood Forest Assocs.,

Ltd., 484 U.S. 365, 370 (1988). A creditor may show that it lacks adequate protection by presenting evidence of no equity in the property or other factors jeopardizing the creditor's position. See In re Anthem Communities/RBG, LLC, 267 B.R. 867, 871 (Bankr.D.Colo. 2001). What constitutes adequate protection is a factual issue to be decided on a case-by-case basis. See In re Martin, 761 F.2d 472, 474 (8th Cir. 1985). The Debtor in this case has failed to make the payments in accordance with the terms and conditions set forth in the Mortgage. Moreover, the Premises is heavily liened resulting in no equity to the Debtor. Finally, Movant has not been provided with adequate protection of Movant's interest in the Mortgage.

As stated previously, pursuant to 11 U.S.C. §362(d)(1) of the Bankruptcy Code, a creditor is entitled to relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such creditor." 11 U.S.C. §362(d)(1). In this case, such circumstances constitute cause, within the meaning of Section 362(d)(1), justifying relief from the stay. In re Video East, Inc., 41 B.R. 176 (Bkrtcy. E.D. Pa. 1984); In re Frascatore, 33 B.R. 687 (Bkrtcy. E.D. Pa. 1983). Pursuant to 11 U.S.C. §362(g), the burden is on the Debtor to prove adequate protection and/or absence of cause.

## CONCLUSION

Based upon the foregoing, Movant respectfully requests the Court grant Movant relief from the automatic stay.

Dated this 24th day of June, 2009.      GURSTEL, STALOCH & CHARGO, P.A.

      BY_/e/ *Bridget A. Sullivan*_____
       Bridget A. Sullivan (#265974)
       Attorneys for Movant
       6681 Country Club Drive
       Golden Valley, Minnesota 55401
       Telephone: (763) 267-6855

| | |
|---|---|
| IN RE: | BKY 09-32106 |
| | Chapter 7 |
| Kevin A. Dahl, | |
| | **UNSWORN CERTIFICATE** |
| Debtor. | **OF SERVICE** |

   I, Ann Brotzler, declare under penalty of perjury, that I am an employee of Gurstel, Staloch & Chargo, P.A. and on the 24th day of June, 2009, I served copies of the attached Notice of Hearing and Motion for Relief from Automatic Stay, Affidavit of Timothy Matyi, Memorandum of Law and proposed Order, on all persons listed below, at the addresses shown, by mailing to each of them a copy thereof, enclosed in an envelope, postage prepaid, and by depositing same in the post office at Minneapolis, Minnesota, to-wit:

Kevin A. Dahl
18698 Kanabec Court
Lakeville, MN 55044

Mary L. Cox, Esq.
Stein & Moore, P.A.
The First National Bank Building
332 Minnesota Street
Suite W-1650
Saint Paul, MN 55101
Attorneys for Petitioning Creditor Lake Area Bank

Mary Jo. A. Jensen-Carter, Esq.
Buckley & Jensen
1257 Gun Club Road
White Bear Lake, MN 55110
Attorneys for Petitioning Creditor First National Bank of Northfield

R. Glenn Nord, Esq.
R. Glenn Nord & Associates, P.A.
20686 Holyoke Ave
P.O. Box 427
Lakeville, MN 55044
Attorneys for Petitioning Creditor Amy Starita

U.S. Trustee's Office
1015 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

Executed on: June 24, 2009      */e/ Ann Brotzler*____
                   Ann Brotzler
                   6681 Country Club Drive
                   Golden Valley, Minnesota 55427

| | |
|---|---|
| IN RE: | BKY 09-32106 |
| | Chapter 7 |
| Kevin A. Dahl, | **ORDER** |
| Debtor. | |

This case came before the Court on the Motion of Crown Bank ("Secured Creditor") for Relief from the Automatic Stay (the "Motion").

Based on the files, records and proceedings herein, the Court being advised in the premises,

**IT IS HEREBY ORDERED:**

1. That Secured Creditor its assigns, assignees and/or successors in interest are granted relief from the automatic stay imposed by 11 U.S.C. § 362.

2. Notwithstanding Federal Rule of Bankruptcy Procedure 4001(a)(3), this Order is effective immediately, and Secured Creditor is authorized to immediately commence foreclosure of the Property, or otherwise satisfy its interest in the Property more specifically described below, in accordance with the Mortgage and Minnesota law:

Real Property generally described as 900 W Bitner Road Unit #24, Park City, Utah 84098 and legally described as:

UNIT 24, BUILDING F, CONTAINED WITHIN THE CANYON CREEK CONDOMINIUM, A CONDOMINIUM PROJECT AS THE SAME IS IDENTIFIED IN THE RECORD OF SURVEY MAP RECORDED ON NOVEMBER 15, 2000 IN SUMMIT COUNTY, AS ENTRY NO. 576804, (AS SAID RECORD OF SURVEY MAP MAY HAVE HERETOFORE BEEN AMENDED OR SUPPLEMENTED) AND IN THE DECLARATION OF CONDOMINIUM RECORDED IN SUMMIT COUNTY, AS ENTRY NO. 576805 IN BOOK 1341 AT PAGE 1100 (AS SAID DECLARATION MAY HAVE HERETOFORE BEEN AMENDED OR SUPPLEMENTED) TOGETHER WITH THE APPURTENANT UNDIVIDED INTEREST IN SAID PROJECT'S COMMONAREAS AS ESTABLISHED IN SAID DECLARATION AND ALLOWING FOR PERIODIC ALTERATION BOTH IN THE MAGNITUDE OF SAID

UNDIVIDED INTEREST AND IN THE COMPOSITION OF THE COMMON AREAS
AND FACILITIES TO WHICH SAID INTEREST RELATES.

BY THE COURT:

DATED:

_____
The Honorable Gregory F. Kishel
Judge of Bankruptcy Court